Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
SNELL & WILMER L.L.P.
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
Telephone:  503.624.6800
Facsimile:  503.624.6888
Attorneys for Plaintiff Joseph Lengele

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| JOSEPH LENGELE, an individual,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>WILLAMETTE LEADERSHIP ACADEMY, a public charter school, and PEOPLE SUSTAINING KINGS VALLEY, an Oregon domestic nonprofit corporation,<br><br>　　　　Defendants. | Case No. 6:22-cv-1077<br><br>COMPLAINT<br><br>42 U.S.C. § 1983<br><br>DEMAND FOR JURY TRIAL<br><br>*Request for leave to proceed in forma pauperis to be filed.* |

## SUMMARY OF LAWSUIT

Plaintiff Joseph Lengele was a criminal justice and self-defense instructor at defendant Willamette Leadership Academy ("WLA"), a public charter school in the Springfield School District. He received an Award of Honor from WLA in 2018, for rescuing two staff members who had flipped their vehicle; an Excellence in Education award from a local radio station in 2019; and Teacher of the Month in April 2022, 30 days before WLA fired him without the chance to clear his name. This lawsuit concerns the circumstances of that unconstitutional firing.

Based on the lies of a parent of an WLA student with an axe to grind[1] (the "Parent"), and because WLA conducted absolutely no investigation into her allegations, Plaintiff was fired from WLA by People Sustaining Kings Valley ("PSKV")—the company to which WLA has outsourced its personnel functions. Worse, Parent contacted a local news station and relayed to them her false allegation that Lengele had placed a student—not her child—in a chokehold, and those allegations were reported on. https://www.kezi.com/news/teacher-allegedly-chokes-a-student-at-willamette-leadership-academy-in-eugene/article_77a80b88-dbc8-11ec-bfe0-fb95eb99db65.html. Word of the incident spread quickly, and the story was picked up by the Associated Press. Lengele has been threatened and harassed by people throughout the city in which he lives, Oregon, and the United States. His reputation is destroyed and, absent extensive measures which he cannot now afford, the news report and associated stigma would follow him to any teaching job for which he were to apply.

Plaintiff seeks recompense from WLA for violating his rights under the federal Due Process Clause. WLA is a state actor for purposes of 42 U.S.C. § 1983 based on the structure of Oregon law applying to public charter schools. WLA conducted no investigation and failed to provide Plaintiff an opportunity to clear his name. Plaintiff seeks recompense from PSKV also for violating Plaintiff's due process rights. PSKV was so intertwined with the operations of WLA that it should be regarded as a joint state actor, and held liable for the same reasons as WLA.

**JURISDICTION AND VENUE**

1. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law and the Federal Constitution.

---

[1] Parent's son tried to sexually assault Plaintiff's daughter, who fought him off. Parent was upset that the daughter inflicted injury when she did so, and that Plaintiff had instructed her in how to defend herself.

2. The Court has personal jurisdiction, and is the proper venue, because the defendants reside in the District of Oregon, and the acts or omissions alleged in the Complaint occurred there. The Eugene Division is the appropriate interdivisional venue because the acts or omissions occurred in Lane County.

## THE PARTIES

3. Plaintiff Joseph Lengele resides in Lane County, Oregon. He is a disabled Army veteran and the only criminal justice instructor at the secondary school level in Oregon. He is also a certified wrestling instructor and teaches self-defense. At the time of his termination, Plaintiff had worked at WLA for nearly five years.

4. Defendant Willamette Leadership Academy ("WLA") is a public charter school within the meaning of ORS 338.005(2). It serves students through a military-style model; staff and students receive military ranks, and many staff are veterans. WLA's charter is sponsored by Springfield Public Schools. A copy of WLA's Charter Agreement, dated June 26, 2017, is attached as Exhibit 1 (the "Charter Agreement"). Pursuant to the Charter Agreement, WLA "is bound by District policies and federal and state law regarding recruitment, promotion, discipline and termination of personnel; methods for evaluating performance; and a plan for resolving employee-related problems, including complaint and grievance procedures." As described in the First Claim for Relief, WLA is subject to 42 U.S.C. § 1983.

5. Defendant People Sustaining Kings Valley ("PSKV") is an Oregon domestic nonprofit corporation. WLA has outsourced all or some of its personnel functions to PSKV. PSKV's functions are intertwined with WLA's with respect to Plaintiff's termination, therefore PSKV should be treated as a joint state actor for purposes of Plaintiff's claim under 42 U.S.C. § 1983.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

6. Plaintiff began teaching at WLA in September 2017. Plaintiff believes that he was, and continued to be until his termination this year, the only criminal justice instructor at a secondary school level in Oregon.

7.  Plaintiff is also a certified wrestling coach and a trained self-defense instructor. Among other things, Plaintiff taught a self-defense class, and coached wrestling, at WLA.

A. **On May 24, 2022, Plaintiff evaluates whether a WLA student should be permitted to join Plaintiff's self-defense course.**

8.  In late May 2022, a WLA student named Ryan Bell expressed interest in being instructed by Plaintiff. Bell was an eighth-grader and therefore younger than Plaintiff's typical student. As he would do prior to instructing other similar students, Plaintiff decided to evaluate whether Bell was appropriate for instruction—assuming Bell wished to be evaluated.

9.  Bell indicated to Plaintiff that, in fact, he was interested in being evaluated. So, on May 24, 2022, during Plaintiff's break time, Plaintiff received permission from Bell's teacher that period for Plaintiff to evaluate Bell. Bell's teacher agreed.

10. Plaintiff and Bell walked to the gym, where there were wrestling mats set up on the floor and against the wall. Plaintiff asked an instructor present in the gym to observe the evaluation.

11. Plaintiff first asked Bell whether he would start from a standing or kneeling position. He preferred kneeling. Plaintiff then partially applied standard wrestling holds—for example, a "partial choke-hold" without an actual choke. At all times, Bell had plenty of room to escape from these standard wrestling holds, and indeed, the point was to observe Bell try to escape and whether he could follow instructions on how to do so.

12. Unfortunately, Bell did not heed Plaintiff's instructions. He repeatedly held his breath despite Plaintiff's instructions not to do so. Bell may have thought to do so because this is a common Mixed Martial Arts technique (MMA)—a dangerous one—to try to escape from holds and, according to Bell, his older brother is an MMA competitor.

13. After Bell held his breath a third time, Plaintiff asked the staff-member referee to call the match. The referee did so. The match lasted a total of 3 to 4 minutes. When the match was called, Plaintiff informed Bell that he would not be eligible for instruction due to his inability to follow instructions.

14. Bell was upset that Plaintiff would not teach him, so before Plaintiff returned Bell to his class, Plaintiff spoke at length with Bell. He was visibly upset. Also, he blew his nose very hard and his face turned quite red—which is typical when someone holds his breath.

15. Bell did not suffer injury. Indeed, he played basketball for over an hour that afternoon as he waited to be picked up.

**B.    Parent picks up Bell (who is not Parent's child) from school.**

16. On the afternoon of May 24, after Bell played basketball for over an hour, Parent, who is the parent of another WLA student, picked Bell up.

17. According to Bell's mother during a call she had with Plaintiff on the night of May 24, when Parent picked Bell up, she began speaking to Bell about the evaluation.

18. After speaking with Bell about the evaluation, Parent called KEZI, the local ABC affiliate and, upon information and belief, reported that Plaintiff had "choked" or "strangled" Bell for nearly seven minutes, and that WLA staff had to intervene in order to rescue Bell. Parent also posted similar language to her social media accounts. She relayed similar information to Bell's grandmother. KEZI reported on the incident and interviewed the grandmother. *See* https://www.kezi.com/news/teacher-allegedly-chokes-a-student-at-willamette-leadership-academy-in-eugene/article_77a80b88-dbc8-11ec-bfe0-fb95eb99db65.html.

19. As Plaintiff learned the morning of May 25 from WLA's principal, upon picking Bell up, Parent also immediately wrote to WLA and the School Board to insist that Lengele be fired.

20. None of what Parent said was true. In fact, the night of May 24, Bell's mom reported to Lengele that Parent's statements were untrue.

21. Parent had a motive to lie. Only a few months earlier, her son had attempted to sexually assault Plaintiff's daughter in a WLA restroom. The daughter, whom Plaintiff had trained in self-defense, successfully repelled the attack (to say the least). Parent was very upset with Plaintiff regarding the incident, at one point criticizing Plaintiff for having taught his daughter how to defend herself.

  **C.** **Plaintiff is placed on paid leave, then fired two hours later after no investigation.**

  22. The morning of May 25, 2022, Plaintiff was placed on paid administrative leave pending an investigation.

  23. However, two hours after learning that he was placed on leave, and apparently without any investigation by WLA or PSKV, he was informed that he was terminated effective immediately.

  24. WLA later informed Plaintiff that it was defendant PSKV—through Will Andrews, PSKV's Executive Director—that made the termination decision, notwithstanding the language in the Charter Agreement requiring WLA to maintain control of employee discipline and termination.

  25. As Plaintiff subsequently has learned, neither WLA nor PSKV interviewed a single eyewitness to the incident—even though there were multiple staff and students in the immediate vicinity of the wrestling mat. By contrast, the Lane County Sheriff investigated the matter thoroughly and found no basis for arrest, citation, or referral to the District Attorney.

  26. Neither WLA nor PSKV provided Plaintiff any opportunity, much less a meaningful opportunity, to clear his name.

  **D.** **Plaintiff has suffered substantial damages, and will continue to.**

  27. Plaintiff had been earning $40,000 per year as a WLA teacher and coach. That salary has disappeared as a result of WLA's/PSKV's firing him without an opportunity to clear his name.

  28. Moreover, Plaintiff has little opportunity to mitigate damages because Parent's false statements, coupled with outcry on the internet, have undermined, and will undermine, Plaintiff's attempts to find new employment.

  29. Defendants' termination without due process has caused Plaintiff severe and pervasive distress in the form of anxiety, anger, and sleeplessness. Additionally, defendants' acts and omissions have triggered Plaintiff's PTSD, which he developed while he was in the Army.

He has sought additional treatment for that condition as a result of defendants' acts and omissions. It doesn't help that WLA also opposed his unemployment application.

## FIRST CLAIM FOR RELIEF

(42 U.S.C. § 1983 – procedural due process)

(Against both defendants)

30. Plaintiff incorporates the foregoing allegations as though set forth here in full.

31. With respect to the acts and omissions alleged above, defendant WLA has acted under color of state law within the meaning of 42 U.S.C. § 1983. WLA is a public charter school within the meaning of ORS 338.005(2). As such, Oregon statutes requires WLA to follow federal law, state employment laws, anti-discrimination laws (including discrimination in employment), public records law, the Public Contracting Code, the Municipal Audit Law, laws concerning criminal records checks, and statutes and rules that apply to special government bodies or public bodies. *See* ORS 338.115 (outlining requirements). WLA also receives the benefits of the Oregon Tort Claims Act, which applies to public bodies. ORS 338.115(1)(b); *see* ORS 338.115(6). Moreover, as Exhibit 1 shows, WLA's Charter Agreement requires WLA to abide by "District policies and federal and state law regarding recruitment, promotion, discipline and termination of personnel; methods for evaluating performance; and a plan for resolving employee-related problems, including complaint and grievance procedures."

32. With respect to the acts and omissions alleged above, defendant PSKV has acted under color of state law because (a) WLA has acted under color of state law; and (b) PSKV's conduct is chargeable to WLA because PSKV and its personnel participated in the firing. For example, the termination letter Plaintiff received was "from" Colonel Kate Klontz, the principal of WLA, but on PSKV letterhead.

33. Neither WLA nor PSKV provided Plaintiff a meaningful opportunity to clear his name during the two hours between his being placed on paid leave and his termination (or at any point). This failure to provide a name-clearing hearing resulted in his termination and violated Plaintiff's constitutional rights.

34. The final decisionmakers concerning the termination were Will Andrews, PSKV's Executive Director, or Katie Nunes, effectively the principal of WLA, or both of them.

35. This violation of Plaintiff's constitutional rights caused Plaintiff the damages discussed above, including but not limited to present and future lost income, loss of medical benefits, and severe emotional distress. Plaintiff's damages are subject to proof at trial, but estimated to be not less than $1,000,000.

WHEREFORE, Plaintiff prays for judgment as follows:

A. An award of damages according to proof, but not less than $1,000,000;

B. Attorney fees and expert fees pursuant to 42 U.S.C. § 1988;

C. Prejudgment interest;

D. Costs; and

E. Such further relief as the Court deems just.

## JURY DEMAND

Plaintiff demands a jury on all matters so triable.

DATED this 22nd day of July, 2022.

SNELL & WILMER L.L.P.

/s/ Clifford S. Davidson
Clifford S. Davidson, OSB No. 125378
Attorneys for plaintiff Joseph Lengele

4877-2557-3162