IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**JOSEPH LENGELE**, an individual;

                Plaintiff,

        v.

**WILLAMETTE LEADERSHIP ACADEMY**, a public charter school; and **PEOPLE SUSTAINING KINGS VALLEY**, an Oregon domestic nonprofit corporation,

                Defendants.

_____

**Case No. 6:22-cv-01077-MC**

**OPINION AND ORDER**

**OPINION AND ORDER**

**MCSHANE, District Judge:**

Plaintiff Joseph Lengele was an instructor at Willamette Leadership Academy ("WLA"), a public charter school in Oregon. WLA outsources personnel functions to People Sustaining Kings Valley ("PSKV"). Plaintiff alleges that WLA and PSKV violated his liberty rights under the Fourteenth Amendment to the United States Constitution by failing to give him an opportunity for a name clearing hearing. He brings a single claim against both WLA and PSKV under 42 U.S.C. § 1983. For the reasons discussed below, PSKV's motion to dismiss (ECF. No. 13) is GRANTED, and WLA's motion to dismiss (ECF. No. 14) is DENIED.

## BACKGROUND

Prior to his termination, Plaintiff taught self-defense and coached wrestling at WLA, a public charter school in Oregon. Pl.'s Compl. ¶¶ 7, 4, ECF No. 1. WLA outsources all or some of its personnel functions to PSKV, a nonprofit corporation. Pl.'s Compl. ¶ 5. On May 24, 2022, Plaintiff went to the gymnasium with a WLA student ("the student") to evaluate his readiness to enroll in Plaintiff's self-defense course. Pl.'s Compl. ¶ 8. Another WLA staff-member was present to observe the evaluation and to act as a referee. Pl.'s Compl. ¶¶ 10, 13. Once on the wrestling mats in the gym, the student requested to start from the kneeling position. Pl.'s Compl. ¶¶ 10–11. Plaintiff alleges that,

> [he] then partially applied standard wrestling holds—for example, a "partial choke-hold" without an actual choke. At all times, [the student] had plenty of room to escape from these standard wrestling holds, and indeed, the point was to observe [the student] try [sic] to escape and whether he could follow instructions on how to do so. Unfortunately, [the student] did not heed Plaintiff's instructions. He repeatedly held his breath despite Plaintiff's instructions not to do so. . . . After [the student] held his breath a third time, Plaintiff asked the staff-member referee to call the match. The referee did so. The match lasted a total of 3 to 4 minutes. When the match was called, Plaintiff informed [the student] that he would not be eligible for instruction due to his inability to follow instructions.

Pl.'s Compl. ¶¶ 11–13. Apparently, the student was red in the face, but he returned to class, uninjured, as evidenced by the claim that he played basketball for an hour later that day. Pl.'s Compl. ¶¶ 14–15. Another WLA student's parent ("Parent") picked up the student from school that day, and after the student told Parent about the incident, Parent allegedly began spreading misinformation about "the incident." Pl.'s Compl. ¶ 16.

> Parent called KEZI, the local ABC affiliate and, upon information and belief, reported that Plaintiff had "choked" or "strangled" [the student] for nearly seven minutes, and that WLA staff had to intervene in order to rescue [the student]. Parent also posted similar language to her social media accounts. She relayed similar information to [the student's] grandmother. KEZI reported on the incident and interviewed the grandmother. . . . Parent also immediately wrote to WLA and the School Board to insist that [Plaintiff] be fired.

Pl.'s Compl. ¶¶ 18–19.

The next morning, on May 25, 2022, Plaintiff was placed on administrative leave, pending an investigation of the incident. Pl.'s Compl. ¶ 22. However, Plaintiff was terminated just two hours later, "apparently without any investigation by WLA or PSKV. . ." Pl.'s Compl. ¶ 23. Plaintiff's termination letter was on PSKV letterhead and signed by WLA's principal. Pl.'s Compl. ¶ 32. No eyewitnesses of the incident were interviewed nor did WLA or PSKV provide Plaintiff an opportunity to be heard or to clear his name. Pl.'s Compl. ¶ 25–26. Apparently, PSKV's executive director made the termination decision, despite language in WLA's charter agreement "requiring WLA to maintain control of employee discipline and termination." Pl.'s Compl. ¶ 24. The charter agreement, which is incorporated in the Complaint, also binds WLA to district polices and federal and state law regarding discipline and termination of non-union, non-district staff, such as Plaintiff. Pl.'s Compl. ¶ 31; Pl.'s Resp. 4, ECF No. 15.

When the local news report aired on May 24, 2022, WLA initially declined to comment on the incident. However, the story was updated on May 25, 2022:

UPDATE: The school has issued a statement on the incident:

*"At this time, we are continuing to look into the sequence of events that occurred. What we can share is that self-defense electives are taught by trained instructors and are reserved for our high school cadets. In this situation, a student familiar with the staff member who oversees that course requested instruction on various self-defense techniques. While our administrative process moves forward to assess whether any administrative or other violations occurred, it is correct that the instructor is no longer a staff member with our program. We encourage any parents with concerns to contact our school leaders."*

Pls. Compl. ¶ 18 (*incorporating* https://www.kezi.com/news/teacher-allegedly-chokes-a-student-at-willamette-leadership-academy-in-eugene/article_77a80b88-dbc8-11ec-bfe0-fb95eb99db65.html) (accessed Oct. 20, 2022)).

On July 22, 2022, Plaintiff filed this action against WLA and PSKV, alleging that Defendants' joint conduct violated his procedural due process rights. Pl.'s Compl. ¶¶ 29, 33. Liberally construed, Plaintiff seems to allege that because WLA made a public and stigmatizing comment about his termination, failure to provide a name-clearing hearing deprived Plaintiff of a liberty interest in future employment. Pl.'s Compl. ¶¶ 23–26, 31–35. Both Defendants move to dismiss (ECF Nos. 13 & 14) for failure to state a claim.[1]

## **STANDARDS**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. The court "may [also] consider documents that are referred to in the complaint whose authenticity no party questions." *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000) (citation omitted). If the complaint is dismissed, leave to amend should be granted unless "the

---

[1] For discussion purposes, WLA and PSKV are treated as if they filed jointly because "Willamette Leadership Academy adopts and incorporates by this reference all arguments and facts cited by People Sustaining Kings Valley in their Motion to Dismiss" and also "joins People Sustaining Kings Valley's Reply in support of Motion to Dismiss, and incorporates all the arguments and authority presented in that pleading." Def.'s Mot. 1, ECF No. 14; Def.'s Mot. 1, ECF No. 18.

pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Plaintiff brings a title 42 U.S.C. § 1983 claim against defendants WLA and PSKV for violating his procedural due process rights guaranteed by the Fourteenth Amendment. To state a § 1983 claim, "a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Truly private conduct, "no matter how discriminatory or wrongful" is outside the reach of a § 1983 claim. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citations and internal quotations omitted). However, a private person, such as a non-profit corporation, may be held liable if they act under color of state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931–32 (1982).

## I.    Under Color of State Law

"The Supreme Court has articulated four tests for determining whether a non-governmental person[]" acted under color of state law for purposes of liability under § 1983: "(1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the [close] nexus test." *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 995 (9th Cir. 2013) (quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012)) (internal quotations and citations

omitted). To find that a private party acted under color of state law, only one of the tests must be satisfied. *Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002).

### A.    State Action Analysis—WLA

Courts have applied the close nexus test to section 1983 cases involving public charter schools. *See Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812, 818 (9th Cir. 2010); *Sufi v. Leadership High Sch.*, No. C-13-01598(EDL), 2013 WL 3339441, at *8 (N.D. Cal. July 1, 2013). The close nexus test asks whether "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotations omitted).

> Some of the factors to consider in determining whether there is a 'close nexus' are: (1) the organization is mostly comprised of state institutions; (2) state officials dominate decision making of the organization; (3) the organization's funds are largely generated by the state institutions; and (4) the organization is acting in lieu of a traditional state actor.

*Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008).

When the public charter school's employees are not subject to the same degree of regulation by the state as the employees of a traditional public school, the public charter school likely does not act under color of state law when it terminates an employee. *Sufi*, 2013 WL 3339441 at *8. For example, in *Sufi*, the court explained that "[h]owever strong California's regulation of charter schools may be in other areas, its regulation of their employment practices is far lighter than that of the employment practices at traditional public schools." *Id.* The court granted the defendant's motion to dismiss, holding there was not a close enough nexus between the State and the public charter school's employment practices to characterize the termination of the public charter school employee as state action. *Id.*

In contrast, WLA's employees may be subject to the same degree of regulation as traditional public school employees. For example, Plaintiff pleaded that WLA is a public charter school within the meaning of Or. Rev. Stat. § 338.005(2)[2] and that "[p]ursuant to the Charter Agreement, WLA is bound by District policies and federal and state law regarding recruitment, promotion, discipline and *termination of personnel;* methods for evaluating performance; and a plan for resolving employee-related problems, including complaint and grievance procedures." Pl.s' Compl. ¶¶ 4, 31 (emphasis added) (internal quotations omitted). Under Oregon law, public charter schools are bound by "[a]ny statute or rule that is listed in the charter" and "[i]f a statute or rule applies to a public charter school, then the terms "school district" and "public school" shall include public charter school as those terms are used in that statute or rule." ORS 338.115(1)(aa); ORS 338.115(3). Moreover, Defendants do not contest that WLA "is a public charter school associated within a public school district, and therefore may be considered a public entity." Def.'s Reply 1–2, ECF No. 19. Plaintiff's allegation that WLA was acting under color of state law when it terminated him is plausible to sustain a § 1983 claim.[3]

## B.    State Action Analysis—PSKV

PSKV is a nonprofit corporation that "WLA has outsourced all or some of its personnel functions" to. Pl.'s Compl. ¶ 5. Plaintiff alleges that because the employment functions of PSKV and WLA are intertwined and because PSKV cooperated with WLA in terminating Plaintiff, by

---

[2] "'Public charter school'" means an elementary or secondary school offering a comprehensive instructional program operating under a written agreement entered into between a sponsor and an applicant and operating pursuant to this chapter." ORS § 338.005(2).

[3] To be clear, this does not establish that WLA is a state actor for employment purposes as a matter of law. The analysis here is limited to the plausibility standard necessary to survive a motion to dismiss.

extension of WLA's state actor status, PSKV acted under color of state law as well. Pl.'s Compl. ¶¶ 5, 32. The Court disagrees.

A private person may act under color of state law for § 1983 purposes if "he is a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). The joint action test is met when "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity." *Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158, 1169 (9th Cir. 2022) (internal quotations and citations omitted). For example, in *Tsao*, the court found that the police department cloaked casino security guards in state authority by providing them with police training, on-demand access to records information, and the authority to issue legal citations. 698 F.3d 1128, 1140 (9th Cir. 2012) (finding joint action test satisfied); *but see Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995) (no joint action when private organization designated as state's student loan guarantor did not derive its authority from the state, had no sovereign powers, and did not benefit the state).

Cooperation between the private party and an intermediary of the state does not necessarily imbue a private party's conduct with the color of state law. *Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104, 123 (4th Cir. 2022) (en banc). In other words, proving state action under the joint action test is more difficult when the private party is not acting directly with the state. For example, after finding that the public charter school was a state actor for purposes of a § 1983 claim, the Fourth Circuit in *Peltier* declined to extend that status to RBA—the private company contracted to operate Charter Day School ("CDS"):

> There are several key differences between RBA, a for-profit management company, and CDS, the non-profit charter school operator authorized by the state to run a charter school. . . . RBA has no direct relationship with the state and is not a party to the charter agreement between CDS and North Carolina. Instead, RBA manages

the daily functioning of the school under its management agreement with CDS. In working for CDS, rather than for the state of North Carolina, RBA's actions are more attenuated from the state than those of CDS, the entity authorized by the state to operate one of its public schools.

*Peltier*, 37 F.4th at 123. The court concluded that RBA's allegedly unconstitutional conduct was not "fairly attributable" to the state and affirmed its motion for summary judgment. *Id.* at 123, 131 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

Here, too, PSKV's actions are more attenuated from the state than those of WLA. While Plaintiff plausibly alleges some cooperation between PSKV and WLA,[4] Plaintiff fails to allege any joint action between PSKV and the school district or the state. Plaintiff's allegations against PSKV seem to rest on a chain-of-agency theory. That is, PSKV acted under color of state law because it was a joint actor with WLA, who acted under color of state law because of its close-nexus with the school district and the state. Assuming, *arguendo,* that WLA is an agent of the state, unlike the relationship between the police and the security guards in *Tsao,* here, Plaintiff has not shown that WLA cloaked PSKV with state authority or sovereign powers. Because Plaintiff has not plausibly alleged that PSKV was acting under color of state law when it cooperated with WLA, PSKV's motion to dismiss (ECF 13) is granted.

### C.     Plaintiff's Public Employment Status with WLA

Defendants argue that whether WLA acted under color of state law is irrelevant because PSKV was Plaintiff's sole employer and a right to private employment is not a constitutionally protected interest. Def.'s Reply 1–2; Def.'s Mot. 5. Therefore, according to Defendants, the

---

[4] For example, Plaintiff claims that WLA later informed him that the termination decision was made by PSKV's executive director, that both WLA and PSKV chose not to investigate or provide an opportunity to clear his name, and that Plaintiff's termination letter was on PSKV letterhead but signed by WLA's principal. Pl.'s Compl. ¶¶ 23–26, 32.

alleged conduct did not deprive Plaintiff of a constitutional right. Def.'s Mot. 5. Defendants

support their argument, that Plaintiff did not work for WLA, by attaching to their Motion to

Dismiss what appears to be a document signed by Plaintiff acknowledging that he works for

PSKV, a private nonprofit employer, and that he is ineligible for "employment or benefit

programs intended for public-sector employees." Defs. Mot. Ex. 1. Nonetheless, Defendants'

assertions fail to overcome the plausibility of Plaintiff's allegation that he worked, at least in part,

for WLA and may have been a public employee entitled to constitutionally protect interests. At

the motion to dismiss stage, the court must rely on the plausibility of the allegations contained

within the plaintiff's complaint. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925

(9th Cir. 2001). The Court agrees with Plaintiff that in this case, Defendants' reliance on a

document allegedly signed by Plaintiff and attached to Defendants' Motion to Dismiss

"demonstrates that, at a minimum, discovery will be necessary to resolve" whether PSKV was

Plaintiff's sole employer. Pl.'s Resp. 9. *See K.H. by & through Humphrey v. Antioch Unified Sch.

Dist.*, No. C 18-07716 WHA, 2019 WL 2744721, at \*5 (N.D. Cal. July 1, 2019) (denying motion

to dismiss because interpretation of contract allegedly showing interdependence between the

corporation's employees, the charter school, and the school district was a "fact-specific inquiry"

requiring "more than what plaintiff can possibly plead absent discovery").

    Defendants' assertion that "[t]here appears to be no dispute that plaintiff was employed by

PSKV, and PSKV alone" is contradicted by allegations contained and incorporated in Plaintiff's

Complaint. Def.'s Reply 1–2. For example, WLA's charter states that WLA will serve as the

employer of non-union staff and that WLA "may hire and independently manage non-union,

registered staff through its entity as a nonprofit, 501(c)(3) corporation." Pl.'s Compl. Ex. 1, 9 at

19, 22; Pl.'s Compl. ¶ 4. Plaintiff also asserts that he worked at WLA and that WLA's principal signed his termination letter. Pl.'s Compl. ¶¶ 3, 32.

Additionally, WLA allegedly referred to Plaintiff as a "staff member with our program" when commenting on the incident to the local news media. Pl.'s Compl. ¶ 18 (*incorporating* https://www.kezi.com/news/teacher-allegedly-chokes-a-student-at-willamette-leadership-academy-in-eugene/article_77a80b88-dbc8-11ec-bfe0-fb95eb99db65.html) (accessed Oct. 20, 2022)). Taken collectively, Plaintiff provides sufficient factual allegations to support his assertion that he worked for WLA. Having already concluded that WLA plausibly acted under color of state law, it is also plausible that Plaintiff was a public employee of WLA.

Finally, the court is not convinced that WLA can avoid Section 1983 scrutiny by merely off-shoring its human resource department to a private entity.

## II.    Liberty Interest—Name-Clearing Hearing

"[A] terminated [public] employee has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for the termination is publicly disclosed." *Cox*, 359 F.3d at 1110. The employee's liberty interest is implicated when the stigmatizing statement impairs his reputation for honesty or morality. *Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d 773, 777 (9th Cir. 1982). But "[w]hether a defendant's statements rise to the level of stigmatizing the plaintiff is a question of fact." *Kramer v. Cullinan*, 878 F.3d 1156, 1162 (9th Cir. 2018). Furthermore, the "stigmatizing statements need not name an employee to be actionable, so long as the surrounding circumstances make clear that the statement makes particular reference to the employee." *Tibbetts v. Kulongoski*, 567 F.3d 529, 537 (9th Cir. 2009); *citing* Restatement (Second) of Torts § 564A (1977) ("One who publishes defamatory matter

concerning a group or class of persons is subject to liability if, but only if (a) the group or class is so small that the matter can reasonably be understood to refer to the member, or (b) the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.").

To support a due process claim in this context, Plaintiff must show that (1) the accuracy of the charge is contested; (2) the employer publicly disclosed the charge; and (3) the charge was made in connection with his termination of employment. *Kramer*, 878 F.3d at 1162. When the above factors are met, the employee is entitled to a name-clearing hearing where he can restore his liberty interest by publicly refuting the charge. *Id.* Failure to provide a name-clearing hearing violates the Fourteenth Amendment's due process clause. *Cox*, 359 F.3d at 1110.

Here, whether Plaintiff contests the accuracy of the charge that he choked or strangled the student is not disputed, however, WLA denies publishing a stigmatizing statement. Def.'s Mot. 6–7. More specifically, Defendants argue that Plaintiff's personnel file is not subject to public records requests and that Defendants did not publicize the incident to the news media. Def.'s Mot. 6–7. But if discovery later reveals that Plaintiff's personnel file is held by WLA and is subject to a public records request, then stigmatizing statements within his file plausibly constitute publication.[5] Moreover, while Plaintiff does not allege that WLA was the source for

---

[5] The Court declines to determine at this time whether, in this context, placement of stigmatizing information in a personnel file that is accessible upon a public record request constitutes publication under Oregon law. *See Cox*, 359 F.3d at 1112 ("absent expungement, placement of stigmatizing information in an employee's personnel file constitutes publication when *the governing state law* classifies an employee's personnel file as a public record.") (emphasis added); *but compare Wenzel v. Klamath Cnty. Fire Dist. No. 1*, No. 1:15-CV-1371-CL, 2017 WL 8948595, at *10 (D. Or. Aug. 29, 2017), *report and recommendation adopted*, No. 1:15-CV-1371-CL, 2017 WL 5599478 (D. Or. Nov. 21, 2017) (*explaining Cox* as holding that "the presence of stigmatizing information placed into the public record by a state entity, pursuant to a state statute or otherwise, constitutes sufficient publication" under Oregon law) (citation omitted); w*ith Boggs v. Hoover*, No. CIV. 09-116-ST, 2009 WL 2447553, at *8 (D. Or. Aug. 6, 2009) (limiting *Cox*'s holding to the interpretation of whether the placement of stigmatizing information in an employee's personnel file, subject to a public records request, constitutes publication under Washington law; however, under Oregon law, the conclusion is that it does not).

the reporting on the incident, the local news report includes the following statement made by

WLA:

> UPDATE: The school has issued a statement on the incident:
>
> *"At this time, we are continuing to look into the sequence of events that occurred. What we can share is that self-defense electives are taught by trained instructors and are reserved for our high school cadets. In this situation, a student familiar with the staff member who oversees that course requested instruction on various self-defense techniques. While our administrative process moves forward to assess whether any administrative or other violations occurred, it is correct that the instructor is no longer a staff member with our program. We encourage any parents with concerns to contact our school leaders."*

Pl.'s Compl. ¶ 18 (*incorporating* https://www.kezi.com/news/teacher-allegedly-chokes-a-

student-at-willamette-leadership-academy-in-eugene/article_77a80b88-dbc8-11ec-bfe0-

fb95eb99db65.html) (accessed Oct. 20, 2022)). The news report names Plaintiff and describes

the incident. *Id.* While the statement allegedly made by WLA does not name Plaintiff, "the

surrounding circumstances make clear that the statement makes particular reference to" Plaintiff.

*Tibbetts*, 567 F.3d at 537. Within the context of the article, it is plausible that WLA's alleged

statement amounts to public disclosure of the charge, made in connection with Plaintiff's

termination. The news report accuses Plaintiff of choking the student, which implicates

Plaintiff's reputation for morality. Whether the stigmatizing nature of the charge implicates

Plaintiff's liberty interest is a question of fact inappropriate to determine at the motion to dismiss

phase. In sum, Plaintiff has sufficiently plead that WLA publicly disclosed a stigmatizing

statement in connection with his termination, and therefore, he was entitled to a name-clearing

hearing.

Clearly, Plaintiff has some factual hurdles in this case. It is undisputed that the alleged

stigmatizing statements were made by the parents of the student and published by the news

media without the involvement of WLA. This requires further legal analysis, and whether

WLA's termination can be interpreted as furthering and adopting a third-party statement that has already occurred is a matter for another day.

## **CONCLUSION**

PSKV's Motion to Dismiss (ECF No. 13) is GRANTED, and Plaintiff's claim against PSKV is dismissed with prejudice. WLA's Motion to Dismiss (ECF No. 14) is DENIED.

DATED this 17th day of November, 2022.

_____/s Michael J. McShane_____
Michael J. McShane
United States District Judge